```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
UNITED STATES OF AMERICA                 :
                                         :   No. 20 Cr. 297 (JFK)
     -against-                           :
                                         :   OPINION & ORDER
WINTON OVALLE,                           :
                                         :
                    Defendant.           :
----------------------------------------X
```

APPEARANCES

FOR DEFENDANT WINTON OVALLE:
    Pro Se

FOR THE UNITED STATES OF AMERICA:
    Sarah Mortazavi & Cecilia Vogel
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

Before the Court is twenty-six-year-old Defendant Winton Ovalle's ("Ovalle") pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). In his motion, Ovalle asks the Court to reduce his sentence to time served and convert the outstanding balance of his sentence to supervised release with a condition of home confinement. Ovalle argues that his medical conditions and the threat posed by COVID-19 constitute "extraordinary and compelling reasons" warranting compassionate release. The Government opposes Ovalle's request. For the reasons set forth below, Ovalle's motion is DENIED.

**I. Background**

Unless otherwise noted, the following is taken from the materials submitted by the parties, Ovalle's Presentence

1

Investigation Report ("PSR"), (ECF No. 33), and the transcript of Ovalle's January 27, 2021, sentencing, (ECF No. 42). In ruling on Ovalle's request, the Court has considered the arguments advanced in his pro se motion, (ECF No. 41), and the government's letter in opposition, (ECF No. 44).

On October 15, 2020, Ovalle pled guilty to one count of conspiracy to distribute and possess with intent to distribute: (1) 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846; (2) mixtures and substances containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(c)(1)(C); and (3) mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(b)(1)(C). (PSR ¶¶ 1, 4, 9.) The offense conduct related to Ovalle's participation in a drug trafficking conspiracy that distributed fentanyl, methamphetamine, cocaine, and heroin in the New York metropolitan area. (Id. ¶¶ 12, 13.) Over the course of the Federal Bureau of Investigation's ("FBI") investigation of Ovalle and his co-conspirators, Ovalle sold tens of thousands of dollars' worth of fentanyl pills to confidential sources acting at the direction of the FBI. (Id. ¶¶ 13-30.) The pills sold by Ovalle were deceptively designed to look like oxycodone pills. (Id. ¶¶ 13, 17.)

Ovalle's sentencing occurred on January 27, 2021, during which the Court found a Sentencing Guideline offense level of 27 and a Criminal History Category of I.  (Sentencing Transcript ("Sent. Tr.") at 19:24-25.)  The Government advocated for a Guidelines sentence of 70 to 80 months and Ovalle's counsel requested a sentence of 24 months.  (Id. at 19:9-15.)  The Court imposed a below-guidelines sentence of 48 months' imprisonment.

On October 27, 2021, Ovalle filed the instant motion requesting a reduction in his sentence and his immediate release to home confinement.  (Motion for Compassionate Release ("Motion") at 1.)  In his motion, Ovalle argues that his medical conditions, including asthma, obesity, and recurring sinus infections, coupled with the spread of COVID-19 at the facility where he is incarcerated, FCI Morgantown, constitute extraordinary and compelling reasons warranting his immediate release.  (Id. at 4-9.)  In response, the Government argues that Ovalle's request should be denied because (1) he is fully vaccinated against COVID-19, and (2) any modification of his sentence would be inconsistent with the sentencing factors of 18 U.S.C. § 3553(a).  (Government Letter in Opposition ("Gov't Opp'n") at 1.)  Ovalle did not submit a reply to the government's response.

**II. Applicable Law**

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, a district court may reduce a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Court is also required to consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. The § 3553(a) factors include "the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities." United States v. Roney, 833 F. App'x 850, 852 (2d Cir. 2020) (quoting 18 U.S.C. § 3553(a)). Application of these factors requires an assessment of whether the "factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence." United States v. Ebbers, 432 F. Supp. 421, 430-31 (S.D.N.Y. Jan. 8, 2020).

In the Second Circuit, the U.S. Sentencing Commission's policy statement concerning what qualifies as an "extraordinary and compelling" reason for release "is not 'applicable' to

4

compassionate release motions brought by defendants," and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020). Accordingly, district courts are free to "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." Id. at 237; see also United States v. Ciprian, No. 11 Cr. 1032 (PAE), 2021 U.S. Dist. LEXIS 18698, at *5 (S.D.N.Y. Feb. 1, 2021) ("[T]he Court is not constrained by either § 1B1.13's enumeration of extraordinary and compelling reasons or by its freestanding requirement that the defendant seeking release not pose any danger to the community.").

"Since the onset of the COVID-19 pandemic, numerous courts have held that the presence of preexisting [medical] conditions that increase the risks associated with the virus, in combination with the conditions of confinement, constitute extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)." United States v. Serrano, No. 13 Cr. 58 (AKH), 2020 WL 5259571, at *3 (S.D.N.Y. Sept. 3, 2020) (collecting cases); see also United States v. Bush, No. 17 Cr. 611 (AT), 2021 WL 3097417, at *2 (S.D.N.Y. July 21, 2021) ("Courts have granted modified sentences in light of COVID-19 for inmates with illnesses or injuries that make them

5

particularly vulnerable to COVID-19."). When considering such claims, courts in this District "have generally considered the age of the defendant; the severity and documented history of the defendant's health conditions, as well as the defendant's history of managing those conditions in prison; the presence and proliferation of infections in the prison facility at issue; [and] the proportion of the term of incarceration that the defendant has served . . . ." United States v. Franco, No. 12 Cr. 932 (PAC), 2020 WL 4344834, at *2 (S.D.N.Y. June 24, 2020). Because Ovalle is proceeding pro se, the Court construes his motion liberally, reading it to raise the strongest arguments it suggests. See Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001).

**III. Discussion**

**A. Extraordinary and Compelling Reasons**

The threshold question presented by Ovalle's motion is whether he has established that extraordinary and compelling reasons justify his release.[1] As noted previously, Ovalle argues that his asthma, obesity, and recurring sinus infections—known as sinusitis—place him at high risk of developing severe illness if infected with COVID-19. Ovalle further argues that

---

[1] The government concedes that Ovalle has exhausted the relevant administrative remedies pursuant to § 3582(c). (Gov't Opp'n at 1 n.2.)

6

shortcomings in FCI Morgantown's response to the pandemic, such as an allegedly low vaccination rate among staff and general non-compliance with the facility's masking policies, increases his risk of infection.  Ovalle avers that his medical conditions and conditions of confinement amount to "extraordinary and compelling reasons" for his release.  The Court disagrees.

First, Ovalle has failed to establish that his medical conditions significantly increase his risk of developing severe illness from COVID-19.  According to his medical records, Ovalle has a Body Mass Index ("BMI") of 30, which is considered obese,[2] and has been diagnosed with asthma and sinusitis.  (PSR ¶ 60; Gov't Opp'n at 4.)  Current guidance from the Centers for Disease Control and Prevention ("CDC") suggests that "[p]eople with moderate-to-severe or uncontrolled asthma are more likely to be hospitalized from COVID-19."  People with Moderate to Severe Asthma, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited Apr. 11, 2022).  Ovalle's asthma, however, is "mild" and he manages the condition with the use of an inhaler.  (PSR ¶ 60.)  As for his sinusitis, the condition is not a "comorbidity" as defined by the CDC and does not increase his risk of developing "severe

---

[2] According to the Centers for Disease Control and Prevention, a person is "obese" if their BMI falls between 30 and 40.  See People With Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 14, 2002).

7

COVID-19 outcomes." Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19: Information for Healthcare Providers, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (last visited April 14, 2022). Finally, although obesity does increase a person's risk of severe illness, Ovalle's BMI is only slightly over the at-risk threshold, and he does not suffer from other medical conditions that, in conjunction with his mild obesity, make him "significantly more vulnerable to the risk of COVID-19 than the average inmate" at FCI Morgantown. United States v. Gonzalez-Casillas, No. 07 Cr. 527 (PAE), 2022 WL 446011, at *4 (S.D.N.Y. Feb. 11, 2022); see also United States v. Farmer, No. 19 Cr. 427 (LTS), 2022 WL 47517, at *3 (S.D.N.Y. Jan. 5, 2022) ("Courts have routinely denied compassionate release based on mild obesity alone, particularly when the defendant is relatively young and has no additional health issues."); United States v. Broadus, No. 17 Cr. 787 (RJS), 2020 WL 3001040, at *2 (S.D.N.Y. June 4, 2020) ("[T]he mere allegation that one is overweight, in prison, and that there is a COVID-19 outbreak nationwide is not sufficiently extraordinary and compelling to justify early release." (cleaned up)); United States v. Cajigas, No. 08 Cr. 391 (VM), 2020 WL 6625210, at *2 (S.D.N.Y. Nov. 11, 2020) (denying release to 50-year-old with a BMI of 35 because, inter alia, "in light of his age . . . and the fact that he

8

presents no other health conditions, [the defendant's] obesity and pre-diabetes do not satisfy the extraordinary and compelling standard").

Furthermore, any threat COVID-19 poses to Ovalle is significantly reduced by the fact that he has recovered from a previous COVID-19 infection, (Gov't Opp'n at 7), and has received two doses of the COVID-19 vaccine, (id. at 7–8).  See United States v. Jimenez, No. 17 Cr. 512 (KMW), 2021 WL 1885121, at *3 (S.D.N.Y. May 11, 2021) ("Defendant's vaccination, along with his previous infection, mitigates the risk that he would otherwise face if he were to be reinfected with COVID-19."); see also United States v. Santana, 18 Cr. 865 (VEC), 2021 WL 1819683, at *2 (S.D.N.Y. May 6, 2021) (finding no extraordinary circumstances due to "the efficacy of the COVID vaccines" and citing data showing Pfizer vaccine is 94% effective at preventing hospitalization).  As a vaccinated individual with non-severe health conditions, Ovalle is "at a fairly low risk of contracting [COVID-19], or of suffering from a severe case if he were to do so."  United States v. Hoey, No. 15 Cr. 229 (PAE), 2021 WL 2689215, at *5 (S.D.N.Y. June 30, 2021).

Second, Ovalle has failed to demonstrate that the conditions of confinement at FCI Morgantown support his release.  As of this writing, there are no confirmed cases of COVID-19 at FCI Morgantown.  See COVID-19 Cases, Bureau of Prisons,

9

https://www.bop.gov/coronavirus/ (last visited April 14, 2022). While the Court is sympathetic to the poor conditions that Ovalle has undoubtedly faced while incarcerated throughout this pandemic, "generalized statements about the conditions of confinement do not constitute compelling reasons for compassionate release." United States v. Farmer, No. 19 Cr. 427 (LTS), 2022 WL 47517, at *4 (S.D.N.Y. Jan. 5, 2022); see also United States v. Knight, No. 17 Cr. 335 (GBD), 2020 WL 4751490, at *2 (S.D.N.Y. Aug. 17, 2020) (denying motion on the grounds that it "essentially relies on an argument that any individual who has Defendant's relatively common medical conditions . . . and is held in federal prison is experiencing extraordinary and compelling circumstances warranting release" (citation omitted)).  Accordingly, because Ovalle does not face a heightened risk of becoming infected with COVID-19 and does not suffer from a medical condition that renders him particularly vulnerable to the virus, the Court finds that his motion fails to establish that extraordinary and compelling reasons support his release.

### B. The § 3553(a) Sentencing Factors

Even if Ovalle could satisfy the "extraordinary and compelling reasons" requirement of 18 U.S.C. § 3582(c)(1)(A), his motion would fail because the sentencing factors of § 3553(a) weigh against modifying his sentence.  As noted above,

Ovalle participated in a drug trafficking conspiracy that distributed a substantial quantity of fentanyl in the New York City area.  Disturbingly, the fentanyl pills Ovalle sold were designed to look like oxycodone—the highly addictive and widely abused prescription medication that is far less potent than fentanyl.  See In re Purdue Pharma, L.P., 635 B.R. 26, 44 (S.D.N.Y. 2021) (noting that individuals suffering from opioid addiction often turn "to alternative sources to get their fix— including street drugs like heroin and its even stronger and more lethal cousin, fentanyl, which is fast acting and 100 times more potent than morphine"), certificate of appealability granted, No. 21 Civ. 7532 (CM), 2022 WL 121393 (S.D.N.Y. Jan. 7, 2022).  Due to the seriousness of Ovalle's criminal conduct, the sentencing factors that weigh in his favor, such as the need to provide necessary medical care, are overshadowed by the combined force of "the nature and circumstances of the offense," as well as the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant."  18 U.S.C. 3553(a).  Because any modification to Ovalle's sentence would be inconsistent with those factors, his motion must be denied.

    **III. Conclusion**

For the reasons set forth above, Defendant Winton Ovalle's motion for compassionate release (ECF No. 41) is DENIED.  The Clerk of Court is respectfully directed to terminate the motion docketed at ECF No. 41.

**SO ORDERED.**

Dated:  New York, New York
        April 14, 2022

_____
John F. Keenan
United States District Judge